**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION**

JOHN CURTIS BEAL
ADC # 114528                                                                                              PLAINTIFF

V.                                    5:09-cv-00098-WRW-JJV

LARRY NORRIS, *et al.*                                                                          DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS
INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge William R. Wilson, Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

  1. Why the record made before the Magistrate Judge is inadequate.

  2. Why the evidence to be proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

  3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any

1

documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

Plaintiff, an inmate at the Varner Super Max Unit of the Arkansas Department of Correction, initiated this action by filing a *pro se* Complaint, pursuant to 42 U.S.C. § 1983, alleging First Amendment claims related to the denial of magazines. Defendants have filed a Motion for Summary Judgment (Doc. No. 29) supported by a Brief (Doc. No. 30) and Statement of Material Facts (Doc. No. 31).

**I.    Summary Judgment Standard**

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005)("The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.")  If the opposing party fails to carry that burden or fails to

establish the existence of an essential element of its case on which that party will bear the burden of proof at trial, summary judgment should be granted. *See Celotex*, 477 U.S. at 322. "Although it is to be construed liberally, a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

**II.     Facts**

Plaintiff's family ordered for him two gift magazine subscriptions: *Sports Illustrated* and *XXL* magazine. Given Plaintiff's inmate class, prison officials prohibited him from receiving the magazines. Based on these facts, Plaintiff alleges violations of his constitutional rights. He further makes allegations of racial discrimination and retaliation on the part of Defendant Conrad.

Defendants' summary judgment motion reports that Plaintiff is not allowed magazines because he had not achieved the requisite status necessary at the unit. Plaintiff was a "Super Max Level 1" inmate at the time the magazines were denied. "According to unit policy, inmates on level one (1), level two (2), and three (3) are NOT allowed to receive magazines until they reach level four (4) status." *See* Doc. No. 2, p. 12/25.[1] Plaintiff's receipt of *Sports Illustrated* magazines during the months of September and October of 2008 were "in error, and it appears that the mistake was corrected." *Id*. at 16/25. The five "Return Mail Notices" sent to Plaintiff by the Department, dated November 4, 2008 through February 20, 2009, indicated the magazines in question were being returned because Plaintiff was a Level One inmate and must be a Level Four inmate in order to receive magazines. *Id.* at pp. 18-22/25.

According to an affidavit executed by Defendant Harris in support of the summary judgment motion,

---

[1] Plaintiff's Exhibits are not sequentially numbered, therefore the page numbers used in this Recommendation for identification reflect those assigned by the Court's CM/ECF system.

>The VSM was designed with the purpose of changing inmate behavior so that the ADC will be able to safely house them in less secure facilities upon their completion of the program. (Ex. 9, Harris Aff. ¶ 5). These inmates are among the ADC.s most incorrigible, and the goal is to train them to behave in an acceptable manner so that they will not damage property, escape, or harm other persons. *Id.* The program is based on the common sense theory that inmates will behave in order to earn and maintain privileges. All privileges enjoyed by inmates at the VSM are earned by good conduct and participation in mandatory programming. Id.
>
>Upon arriving at VSM, inmates are placed on orientation status from one to seven working days. (*Id.* at ¶ 7) They have no privileges during that period. *Id.* During orientation, inmates' behavior is assessed for a determination of whether they will be placed on Level I or punitive status. Inmates who progress to Level I are placed in the transition program. (*Id.* at ¶ 8.)
>
>There are five program levels after orientation. (Id. at ¶ 9) Inmates must maintain Level I, II, III and IV status for a minimum of 90 consecutive days before being considered for the next level. *Id.* Inmates must maintain Level V for at least 180 consecutive days before being considered for transfer to a less secure facility. The VSM Classification Review Committee determines each inmate's eligibility for higher program levels based on adjustment and behavior. *Id*. at ¶ 10. The VSM program levels reflect privileges allowed. Inmates earn additional privileges as they advance to higher levels. Likewise, inmates lose privileges by exhibiting poor conduct, which leads to their demotion to lower levels. Thus, the existence of levels is directly related to VSM.s efforts to rehabilitate its inmates while protecting other inmates, staff, and society at large. Inmates are required to positively modify their behavior and advance in levels through the program. *Id.*
>
>Pursuant to VSM (Supermax) policies, the privilege of ordering and receiving magazine subscriptions is reserved for those inmates who progress through the VSM program and achieve Level IV to Level V. (*Id*. at ¶12)(Ex. 10, Supermax Policies) The policy, which is uniformly applied to all VSM inmates, is a restriction that is rationally related to a legitimate penal interest.

**III.   Analysis**

It is only logical that Plaintiff would believe he was wronged when denied access to magazine subscriptions. Likely it became an emotional issue for Plaintiff given the fact that the magazine subscriptions were gifts from family members. Regardless, this issue has already been decided by the United States Supreme Court.

In *Turner v. Safley*, 482 U.S. 78 (1987), the United States Supreme Court held that "when

a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner* at 89. To determine if a regulation is reasonably related to a legitimate interest, the Court is to consider four factors. "First, there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." *Id*. Next, the Court must consider "whether there are alternative means of exercising the right that remain open to prison inmates." *Id*. at 90. Third, the Court should consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." The final consideration for the Court is that "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." *Id.*

In reviewing the facts of this case and the regulation in question, the Court finds that the Arkansas Department of Correction's ban on Plaintiff's magazines is limited in scope and validly and rationally based on prison security and behavior modification. The policy prohibiting magazines applies to only three classes of inmates and those inmates can earn this privilege through behavior modification - a goal of the VSM program. Accordingly, the regulation is rationally related to the objectives that Defendants are trying to meet.

In *Beard v. Banks*, 548 U.S. 521 (2006), the United States Supreme Court addressed a nearly identical policy of the Pennsylvania Department of Corrections which prohibited access to newspapers and magazines, among other items, by inmates housed in the most restrictive level of the prison's long-term segregation unit. *Id*. at 526. Just as the case here, the Pennsylvania prison officials reported the policy was necessary to motivate better behavior on the part of inmates, to minimize the amount of property possessed by the inmates, and to eliminate materials that inmates might use as weapons. *Id*. at 531. The United States Supreme Court found that such a policy was

justified. Specifically, the Court determined that the need to provide particularly difficult prisoners with increased incentives for better prison behavior was reasonably related to a valid penological interests and did not violate the inmates' constitutional rights. *Id.* at 533.

Accordingly, based upon the foregoing discussion, the Court finds that, as a matter of law, the regulation implemented by Defendants does not violate Plaintiff's constitutional rights. The Defendants' summary judgement motion should, therefore, be GRANTED.

**IV.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that Defendants' Motion for Summary Judgment (Doc. No. 29) be GRANTED and Plaintiff's Complaint be DISMISSED.

IT IS FURTHER RECOMMENDED that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations would not be taken in good faith.

DATED this 4th day of November, 2009.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE